IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

MANUEL G. TORRES,

          Plaintiff,

v.                                                              No. 2:17-cv-765-KRS-GBW

DET. CHRISTINE MURILLO,
DET. MELINDA HOBBS, CORP.
JAIMIE SERRANO a/k/a Officer Serrano,
CHIEF OF POLICE ED REYNOLDS,
CHIEF DEPUTY DISTRICT ATTORNEY
G. GEORGE ZSOKA, SILVER CITY POLICE
DEPARTMENT and TOWN OF SILVER CITY,

          Defendants.

## ORDER DENYING DEFENDANT JAIMIE SERRANO'S MOTION TO DISMISS

**THIS MATTER** comes before the Court on Defendant Jaimie Serrano's Motion to Dismiss.[1] (Doc. 35). With the consent of the parties to conduct dispositive proceedings, *see* 28 U.S.C. §636(c), the Court has considered the parties' submissions (Docs. 35, 50 & 59) and applicable law as well as reviewed the record. Having done so, the Court finds that Plaintiff has pled facts sufficient to plausibly demonstrate the violation of a constitutional right that is actionable under 42 U.S.C. § 1983. Because the Court determines that Defendant is not entitled to qualified immunity at this stage of the proceeding, the Court denies Defendant's Motion.

---

[1] Document 35 filed by Jaimie Serrano is entitled "Defendant Corporal Jaime (sic) Serrano's Motion to Dismiss or, in the Alternative, for Summary Judgment" and document 36 filed by Jaimie Serrano is entitled "Defendant Corporal Jaimie Serrano's Memorandum Brief in Support of Motion to Dismiss". While documents 35 and 36 include legal standards and argument concerning a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), documents 35 and 36 do not contain the legal standards for summary judgment, or the information required by Fed. R. Civ. P. 56. Accordingly, the Court construes document 35 as a motion to dismiss made pursuant to Fed. R. Civ. P. 12(b)(6).

1

**I.     BACKGROUND.**

Plaintiff filed a complaint against Defendant Serrano and others on July 25, 2017, seeking an award of damages pursuant to 42 U.S.C. § 1983 and the New Mexico Tort Claims Act. (Doc. 1).   Plaintiff alleges that during the evening of June 21, 2015, he was involved in a shooting incident near his home in Silver City, New Mexico.  Plaintiff contends that several Silver City Police Department officers or detectives and one Santa Clara Police Department officer, Defendant Serrano, responded to the scene of the shooting and conducted an investigation.  Plaintiff alleges that he assisted the officers at the scene of the shooting for a period of time, gave his statement of his actions and observations to the officers, and then returned to his home.  Plaintiff alleges that later, Defendant Serrano came into his home, without a search warrant or other authorization, and requested that Plaintiff turn over the gun he had used in the shooting incident.  Criminal charges were ultimately brought against Plaintiff by the Sixth Judicial District Attorney's Office, which were later dismissed with a finding by the New Mexico State District Judge for lack of probable cause.  As is relevant here, Plaintiff sued Defendant Serrano for violating his Fourth Amendment rights arising from the warrantless entry of Plaintiff's home and seizure of his gun.

**II.    CONTENTIONS.**

Defendant Serrano moves to dismiss Count I of Plaintiff's Complaint on the basis of qualified immunity.  Defendant Serrano also asserts that his interaction with Plaintiff was consensual, and was objectively reasonable, such that Defendant Serrano's encounter did not amount to an improper search or seizure within the meaning of the Fourth Amendment.   Alternatively, Defendant Serrano argues that exigent circumstances justify his search and seizure as an exception to the Fourth Amendment's probable-cause and

warrant requirement. Finally, Defendant Serrano argues that Plaintiff's complaint fails to allege facts sufficient to set forth a plausible claim of a Fourth Amendment violation and that he is therefore entitled to qualified immunity. (Doc. 35).

Plaintiff counters by asserting that Defendant Serrano did not provide any legal basis or standards in his motion to dismiss to support that he is immune pursuant to a qualified immunity defense for a Fourth and Fourteenth Amendment violation. In response to Defendant Serrano's claim that his actions were consensual and objectively reasonable, and that exigent circumstances existed such that no Fourth Amendment violation occurred, Plaintiff argues those issues are genuine issues of material fact properly addressed on summary judgment, rather than in a motion to dismiss. (Doc. 50).

### III. STANDARD OF REVIEW FOR MOTION TO DISMISS.

Rule 12(b)(6) authorizes a court to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "The nature of a Rule 12(b)(6) motion tests the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true." *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994). In ruling on a Rule 12(b)(6) motion to dismiss, the Court must accept all well-pleaded allegations as true and must view them in the light most favorable to the plaintiff. *See Zinermon v. Burch*, 494 U.S. 113, 118 (1990); *Swanson v. Bixler*, 750 F.2d 810, 813 (10th Cir. 1984). Rule 12(b)(6) requires that a complaint set forth the grounds of a plaintiff's entitlement to relief through more than labels, conclusions and a formulaic recitation of the elements of a cause of action. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must allege facts sufficient to state a plausible claim of relief. *Id*. at 570. A claim is facially plausible if the plaintiff pleads facts sufficient for the court to reasonably infer that the

defendant is liable for the alleged misconduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

"The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft*, 556 U.S. at 678 . "Thus, the mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims." *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007).

While a complaint challenged by a Rule 12(b)(6) motion to dismiss does not require detailed factual allegations, a complaint does not "suffice if it tenders naked assertions devoid of further factual enhancement." *Iqbal*, 556 U.S. at 678 (internal alterations, citations, and quotations omitted); *see also Bixler v. Foster*, 596 F.3d 751, 756 (10th Cir. 2010). The court is not required to accept conclusions of law or the asserted application of law to the alleged facts. *Hackford v. Babbitt*, 14 F.3d 1457, 1465 (10th Cir. 1994).

IV.  **ANALYSIS.**

    A.  **Motion to Dismiss based upon Qualified Immunity.**

Count I of Plaintiff's Complaint alleges that Defendant Serrano violated Plaintiff's rights under the Fourth and Fourteenth Amendments and seeks damages pursuant to 42 U.S.C § 1983.[2] Section 1983 itself does not confer any substantive rights, only a monetary remedy for individuals who are deprived of constitutional or other federal statutory rights by persons acting under of color of state law. *See also Nelson v. Geringer*, 295 F.3d 1082, 1097 (10th Cir. 2002). ("[S]ection 1983 did not create any substantive rights, but merely enforces existing constitutional

---

[2] Defendant Serrano's Memorandum discusses every count of the Complaint. Plaintiff concedes, however, that Defendant Serrano is only named in Count I. The Court therefore only analyzes the sufficiency of Count I.

4

and federal statutory rights[.]"). To state a claim upon which relief can be granted under Section 1983, a plaintiff must allege: (i) a deprivation of a federal right; and (ii) that the person who deprived the plaintiff of that right acted under color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988). The Tenth Circuit has framed the inquiry as requiring the plaintiff to establish:

> (1) a violation of rights protected by the federal Constitution or created by federal statute or regulation, (2) proximately caused (3) by the conduct of a "person" (4) who acted under color of any statute, ordinance, regulation, custom[,] or usage, of any State or Territory or the District of Columbia.

*Summum v. City of Ogden*, 297 F.3d 995, 1000 (10th Cir. 2002).

Defendant Serrano seeks dismissal under Rule 12(b)(6) on the basis of qualified immunity.[3] Qualified immunity shields government officials from liability in a Section 1983 case where "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "Although summary judgment provides the typical vehicle for asserting a qualified immunity defense," it may also be asserted under Rule 12(b)(6). *Peterson v. Jensen*, 371 F.3d 1199, 1201 (10th Cir. 2004). In the context of a motion to dismiss, the Court "must consider whether the facts that a plaintiff has alleged make out a violation of a constitutional right, and whether the right at issue was clearly established at the time of defendant's alleged misconduct."[4] *Leverington v. City of Colorado Springs*, 643 F.3d

---

[3] The Court agrees with Plaintiff that Defendant Serrano does not provide any legal basis or standards in his motion to dismiss to support that he is immune pursuant to a qualified immunity for a Fourth Amendment violation. Curiously Defendant Serrano cites to the New Mexico Tort Claims Act in support of his assertion of immunity. *See* N.M. Stat. Ann. § Section 41-4-12 (2001) of the New Mexico Tort Claims Act. Section 41-4-12, however, sets forth those claims under state law for which the New Mexico Tort Claims Act does not provide immunity from liability in a federal lawsuit. As best the Court can discern from the motion, Defendant Serrano asserts that Plaintiff has not adequately pled a violation of the Fourth Amendment, which is an attack under the first prong of the qualified immunity analysis. Although Defendant Serrano conflates many different concepts in his supporting brief, in the interest of disposing of the matter, the Court construes Defendant's request as a motion to dismiss on the basis of the first prong of the qualified immunity analysis.

[4] The Court recognizes that second prong of the qualified immunity analysis requires the Court to evaluate whether the constitutional right alleged to have been violated was clearly established on the date of the alleged violation. See *Riggins v. Goodman*, 572 F.3d 1101, 1107 (10th Cir. 2009). However, Defendant Serrano did not raise that issue in

5

719, 732 (10th Cir. 2011). In sum, Defendant Serrano argues that Count I does not state a constitutional violation under the Fourth Amendment against him for unlawful search and seizure. The Court therefore focuses on the first prong of the qualified immunity analysis.

The Fourth Amendment protects "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." *U.S. Const., amend. IV*. It also commands that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." *Id.* "The security of one's privacy against arbitrary intrusion by the police—which is at the core of the Fourth Amendment—is basic to a free society." *Wolf v. Colorado*, 338 U.S. 25, 27(1949), *overruled on other grounds by Mapp v. Ohio*, 367 U.S. 643 (1961). "[T]he Fourth Amendment protects people, not places," and the Supreme Court has vigorously asserted that the proper analysis under the Fourth Amendment is not whether the particular place searched is a "constitutionally protected area." *Katz*, 389 U.S. at 351.

Rather, the inquiry is whether the defendant had an expectation of privacy in the place searched and whether that expectation was objectively reasonable. *See id.* ("What a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection. But what he seeks to preserve as private, even in an area accessible to the public, may be constitutionally protected."); *Id.* at 361 (Harlan, J., dissenting) ("My understanding of the rule that has emerged from prior decisions is that there is a twofold requirement, first that a person have exhibited an actual (subjective) expectation of privacy and, second, that the expectation be one that society is prepared to recognize as 'reasonable.'"). There is no doubt, however, that a citizen has a reasonable expectation of privacy, and a particularly

---

his motion to dismiss. In fact, the phrase "clearly established" is not even mentioned in the motion to dismiss. Since Defendant Serrano failed to raise or brief the issue of whether the constitutional right alleged to have been violated was clearly established on the date of the alleged violation, the Court will not address that issue.

strong one, in his own home. *See Kyllo v. United States*, 533 U.S. 27, 31 (2001) ("'At the very core' of the Fourth Amendment 'stands the right of a man to retreat into his own home and there be free from unreasonable governmental intrusion.'") (quoting *Silverman v. United States*, 365 U.S. 505, 511(1961)); *Payton v. New York*, 445 U.S. 573, 586 (1980) ("[S]earches and seizures inside a home without a warrant are presumptively unreasonable"); *Manzanares v. Higdon*, 575 F.3d 1135, 1142–43 (10th Cir. 2009); *United States v. Najar*, 451 F.3d 710, 713–14 (10th Cir. 2006).

Plaintiff's Complaint establishes a plausible violation of the Fourth Amendment. On June 21, 2015 at approximately 8:15 p. m., while enjoying a Father's Day gathering at his home on Swan Street in Silver City, Plaintiff alleges he noticed a truck appearing to "case" the block for about forty-five minutes. (Doc. 1, ¶¶14-15). Plaintiff heard yelling, fighting and a loud commotion coming from two houses away and went to the front of his home to investigate. (Doc. 1, ¶16). Plaintiff then heard gun shots near the intersection of Swan Street and Sixth Street. (*Id.*). After arming himself with his personal gun, Plaintiff observed a person exit the truck, carrying what appeared to be a rifle at his hip. (Doc. 1, ¶17). Plaintiff had never seen the truck before, and continued to hear gunfire and smell gun discharge. (Doc. 1, ¶18). Plaintiff could hear ongoing gunshots and smell gun discharge. (Doc.1, ¶19). As Plaintiff walked closer to the road and still on his property, he observed gun shots coming from the truck as it was backing up. (Doc. 1, ¶20). Plaintiff's neighbor screamed, "please, stop shooting . . . stop shooting my brother." (*Id.*).

In response, Plaintiff yelled, "Stop, Police!" and fired at the vehicle's back tire as it was backing up, to prevent the truck from driving away. Plaintiff's shell casings fell into his own yard. (Doc. 1, ¶22). While the truck was backing up, Plaintiff observed muzzle flashes and

7

understood the occupants were shooting at people in the yard. (*Id*.). The occupants continued to shoot as the vehicle drove away. (Doc. 1, ¶23). Another truck began driving the opposite direction. Once that vehicle passed Plaintiff, clearing the area, Plaintiff shot at the left rear tire of the truck through a chain-link fence. (Doc. 1, ¶24). At his point, people were running and screaming, and Plaintiff used his police radio to contact dispatch to report the gunfire and give descriptions of the vehicles involved. (Doc. 1, ¶25).

Plaintiff alleges that on-duty officers were dispatched to the scene. Aside from Defendant Serrano, the officers were from the Silver City Police Department. (Doc. 1, ¶26). When the first officer arrived, Plaintiff motioned for her to not cross the crime scene and remained at the scene to assist the other officers and victims. (Doc. 1, ¶¶27-28). Plaintiff gave his statement to Officer Click and Captain Javier Hernandez about what had transpired. (Doc. 1, ¶28). Three people had been shot, multiple times. (Doc. 1, ¶29). There was gun evidence and shells all over the road. (*Id.*). Officer Click, asked Plaintiff to block the road, which he did with crime scene tape. Plaintiff used his vehicle to block of Gold and Swan on 6th Street. (Doc. 1, ¶30). Plaintiff then returned to his home. (Doc. 1, ¶31).

After returning home, Plaintiff alleges, Defendant Serrano entered Plaintiff's home without a warrant or other authorization, in contravention of his rights. (Doc.¶ 36). Defendant Serrano claimed he "needed Manny's weapon" and repeated while inside Plaintiff's home, "I need your gun, to secure it." (Doc. 1, ¶32). Defendant Serrano stated that a detective told him to take Plaintiff's gun, and Defendant Serrano removed Plaintiff's gun along with two magazines and placed them on top of an unmarked police vehicle outside the house, unattended. (Doc. 1, ¶¶33-34). Defendant Serrano refused to identify the detective who requested he seize Plaintiff's property, but Plaintiff believes it was either Detective Hobbs or Murillo. (Doc. 1, ¶35). After the

8

allegedly unlawful search and seizure, Plaintiff received his personal gun back more than a year later. (Doc. 1, ¶37).

Taking these facts as true, Plaintiff had a reasonable expectation of privacy in his home, and Defendant Serrano lacked probable cause and a warrant to enter Plaintiff's home to search for and seize Plaintiff's gun. Plaintiff does not allege in his complaint that he gave Defendant Serrano permission to enter his home, search for items and seize items, and specifically alleges that Defendant Serrano entered his home without authorization.[5] Plaintiff has therefore set forth a plausible cause of action that his Fourth Amendment right to be free from unreasonable searches and seizures was violated by Defendant Serrano entering Plaintiff's home without a warrant, conducting a search, and seizing a gun and ammunition clips. Defendant Serrano was acting under color of law as an on-duty officer and pursuant to the direction of a Silver City Police Department detective. *See West*, 487 U.S. at 44. In sum, Plaintiff's Complaint survives Defendant Serrano's motion to dismiss.

    **B.**    **Defenses Raised by Defendant Serrano.**

Defendant Serrano asserts two justifications for his search and seizure under the Fourth Amendment—exigent circumstances and consent. As is well established, the Court may only look to the four corners of the complaint to resolve a motion to dismiss. *Mobley*, 40 F.3d at 340. In order to prevail on the motion to dismiss, Plaintiff must plead facts sufficient to demonstrate a plausible claim that his constitutional rights were violated by an individual acting under color of state law. *See Summum*, 297 F.3d at 1000. Contrary to Defendant Serrano's implication, Plaintiff is not obligated to anticipate and plead facts to dispel an affirmative defense that might be raised in opposition to his Complaint. *Fernandez v. Clean House, LLC.*, 883 F.3d 1296, 1299

---

[5] Defendant Serrano raises the issue of Plaintiff's consent to the search and seizure of the gun from Plaintiff's home. That issue is addressed below.

(10th Cir. 2018). Exigent circumstances and consent are essentially defenses. Because these defenses rely on facts outside those pled in the Complaint, the Court may not resolve them on a motion to dismiss. In addition, these defenses require the Court to weigh conflicting evidence to evaluate them, which is not permissible in connection with ruling on a motion to dismiss.

        **1.    Exigent Circumstances.**

An exception to the requirement that law enforcement have a warrant issued upon probable cause is the presence of exigent circumstances, such as the presence of evanescent evidence or an emergency requiring the officer's aid. *See Kirk v. Louisiana*, 536 U.S. 635, 638 (2002) (holding that, to enter a home, "police officers need either a warrant or probable cause plus exigent circumstances, in order to make lawful entry into a home."); *Manzanares*, 575 F.3d at 1142–43 ("[E]ven when a felony has been committed and there is probable cause to believe that incriminating evidence will be found within a home, police may not enter without a warrant absent exigent circumstances.") (citation omitted). "[T]he Fourth Amendment does not bar police officers from making warrantless entries and searches when they reasonably believe that a person within is in need of immediate aid." *Mincey v. Arizonza,*, 437 U.S.385, 392 (1978). However, what constitutes an exigent circumstance is "highly circumscribed." *Manzanares*, 575 F.3d at 1142–43 (citation omitted).

In *United States v. Najar*, the Tenth Circuit considered exigent circumstances in the context of a 911 hang-up call. 451 F.3d 710. The dispatcher made several attempts to call back, but, each time, the call was answered and then hung up again without a word. Officers were dispatched to the address and, when they arrived, they knocked and announced their presence. Nobody answered. One of the officers, however, could see that there was a person moving around inside that would walk to the door, see who was outside, but not answer. Eventually, the

officers convinced that person—the homeowner, Richard Najar—to open the door. He denied making the 911 calls and said that nobody else was in the home. Concerned that Mr. Najar was not telling the truth and that there was someone in the home who needed their assistance, officers entered the home over Najar's objection. While inside, the officers found an unharmed woman on the bedroom floor and a shotgun leaning against the wall.

The government charged Najar with being a felon in possession of a firearm, and Najar moved to suppress the evidence based on the officers' illegal entry. The district court denied the motion, and Najar appealed. In upholding the district court, the Tenth Circuit followed a two-part test for assessing exigency where someone inside a home may need emergency assistance: "whether (1) the officers have an objectively reasonable basis to believe there is an immediate need to protect the lives or safety of themselves or others, and (2) the manner and scope of the search is reasonable." *Id.* at 718. "[I]mmediate need," the court explained is to be "'guided by the realities of the situation presented by the record' from the viewpoint of 'prudent, cautious, and trained officers.'" *Id.* at 718–19 (quoting *United States v. Anderson*, 154 F.3d 1225, 1233 (10th Cir. 1998)). By implication, a search is reasonable in manner and scope if the officers "d[o] not attempt to search any place beyond the locations where a victim might likely be found" and "confine[]the search to only those places inside the home where an emergency would reasonably by associated." *Najar*, 451 F.3d at 720. The Tenth Circuit found that the officers in *Najar* had the necessary reasonable basis to believe someone inside needed their help, and that they executed a search that was reasonable in manner and scope. *See id*. at 720.

"The existence of exigent circumstances is a mixed question of law and fact." *United States v. Anderson,* 981 F.2d 1560, 1567 (10th Cir. 1992). Application of the exigent-circumstances exception should be judged on a case-by-case basis. *See Graham v. Connor*, 490

11

U.S. 386, 397 (1989) (commenting that, for Fourth Amendment purposes, the reasonableness of an officer's belief must be assessed in the particular circumstances confronting the officer at the time); *Brigham City, Utah v. Stuart*, 547 U.S. 398, 404 (2006) ("An action is reasonable under the Fourth Amendment, regardless of the individual officer's state of mind, as long as the circumstances, viewed objectively, justify (the) action.") (quotation omitted). The standard is one of objective reasonableness—the officers' subjective intent is not controlling. *See id.*

In this case, Defendant Serrano points to several alleged facts not contained in the Complaint in support of the exigent-circumstances exception. Defendant Serrano claims that it was *early* in the investigation when he was requested to collect Plaintiff's gun, and cites paragraph 32 of the Complaint. (Doc. 36, p. 4). However, this paragraph does not specify the point in time during the investigation when Defendant Serrano was requested to collect Plaintiff's gun. As alleged in the Complaint, Plaintiff assisted officers for a period of time securing the scene, and then gave a statement to officers, before returning to his home. Taking all reasonable inferences in Plaintiff's favor, one can surmise that some period of time elapsed between the shooting incident and when Defendant Serrano entered Plaintiff's home.

Defendant Serrano also contends that he asked Plaintiff to turn over his gun when both men were standing in Plaintiff's front yard. This allegation does not find support in paragraph 32, which avers that Defendant Serrano entered Plaintiff's house without a warrant and requested that Plaintiff relinquish the gun. (*Id.*). The additional facts argued by Defendant Serrano in support of his motion to dismiss are beyond the facts alleged in the Complaint and may not properly be considered in connection with the motion to dismiss. *See Mobley*, 40 F.3d at 340. Defendant Serrano's argument also demonstrates that the Court would be required to weigh

disputed facts to grant Defendant Serrano's motion to dismiss, which is also impermissible. *Miller v. Glanz*, 948 F.2d 1562, 1565 (10th Cir. 1991).

Finally, Defendant Serrano asserts "[w]ith multiple shots fired, three people injured, and Plaintiff admitting he had fired some shots, there was an immediate need to collect guns to protect the lives of the police and others in the vicinity." (Doc. 36, p. 4). The Complaint does contain allegations that multiple shots were fired, that three people were injured, and that Plaintiff admitted he fired some shots. However, the complaint is devoid of allegations that there was an immediate need to collect any gun to protect the lives of the police and others in the vicinity. The Complaint alleges that Plaintiff was a law enforcement officer. Based upon Plaintiff's status as a law enforcement officer, the fact that the officers did not immediately ask Plaintiff for his weapon, search Plaintiff for weapons, and they permitted Plaintiff to assist with securing the shooting scene is objective evidence that did not see a need to protect themselves from Plaintiff.

The precise timing of events is not clear from the Complaint. A significant delay from the time the investigating officers arrived on the shooting scene to the time that Defendant Serrano entered Plaintiff's home to obtain possession of Plaintiff's gun runs contrary to Defendant Serrano's argument that there was an immediate need to collect the gun for safety purposes. The delay also objectively demonstrates a lack of safety concern by the officers who were investigating the incident and the unreasonableness in the actions of Defendant Serrano in entering Plaintiff's home without a warrant. Other indicia of exigency also lack factual support in the Complaint. It does not appear, for example, that the officers were actually concerned with Plaintiff possessing a gun— Plaintiff was not searched, requested to turn over his gun when he initially assisted officers in securing the scene, and there is no allegation, or even any argument,

13

that officers searched for or secured any gun at Plaintiff's home, other than the weapon Plaintiff fired in the incident, prior to the execution of the search warrant. Defendant Serrano concedes safety was not a concern: "Although there may not have been a reasonable expectation that Plaintiff was a danger to the officers, there was a need to locate and secure all weapons used in the shooting." (Doc. 36, pg. 7). It seems the officers actively enlisted Plaintiff's help in controlling the scene in the aftermath of the gunshots.

The lack of any factual averments regarding any concern about Plaintiff's access to guns, other than the gun fired in the shooting incident, objectively demonstrates that officer safety or the safety of other individuals was not paramount. The officers were instead intent upon gathering evidence pertinent to the shooting incident. From the allegations contained in the Complaint, the Court cannot conclude that an exigent circumstance existed as a matter of law that justified Defendant Serrano entering Plaintiff's home to conduct a search for the gun fired by Plaintiff in the shooting incident.

        **2.     Consent.**

Defendant Serrano argues that he did not violate Plaintiff's Fourth Amendment right to be free from unreasonable search or seizure because the search he conducted of Plaintiff's home was consensual. "One of the specifically established exceptions to the requirements of both a warrant and probable cause is a search that is conducted pursuant to consent." *United States v. Pena-Sarabia,* 297 F.3d 983, 985 (10th Cir. 2002). However, the Complaint specifically alleges that Defendant Serrano entered Plaintiff's home without authorization and requested that Plaintiff turn the gun Plaintiff fired in the incident over to Defendant Serrano. (Doc. 1, ¶ 32, 57, 58). The facts pled in the Complaint do not support the defense of consent. Defendant Serrano has not brought his challenges to the claims against him as a motion for summary judgment.

Accordingly, the facts alleged by Defendant Serrano that are in addition to those facts alleged in the complaint may not be considered by the Court when ruling on Defendant Serrano's motion to dismiss.

## V. **CONCLUSION.**

Plaintiff has pled facts sufficient to state a Section1983 claim against Defendant Serrano for unlawful search and seizure under the Fourth Amendment.

**IT IS, THEREFORE, ORDERED** that Defendant Serrano's Motion to Dismiss (Doc. 35) is **DENIED.**

_____
KEVIN R. SWEAZEA
UNITED STATES MAGISTRATE JUDGE
Presiding by Consent