**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**


MANUEL G. TORRES,

                Plaintiff,

v.                                          No. 2:17-cv-00765-KRS-GBW

DET. CHRISTINE MURILLO,
DET. MELINDA HOBBS, CORP.
JAIMIE SERRANO a/k/a Officer Serrano,
CHIEF OF POLICE ED REYNOLDS,
CHIEF DEPUTY DISTRICT ATTORNEY
G. GEORGE ZSOKA, SILVER CITY POLICE
DEPARTMENT and TOWN OF SILVER CITY,

                Defendants.


## ORDER GRANTING IN PART DEFENDANTS ED REYNOLDS, CHRISTINE MURILLO AND MELINDA HOBBS' MOTION TO DISMISS AND/OR SUMMARY JUDGMENT ON THE BASIS OF QUALIFIED IMMUNITY

      **THIS MATTER** comes before the Court on Defendant Chief of Police Ed Reynolds and

Detectives Christine Murillo and Melinda Hobbs' motion for summary judgment on the basis of

qualified immunity.[1]  Plaintiff Manuel Torres, himself a law enforcement officer, sued these

individuals for Fourth Amendment violations arising from Defendant Officer Jaime Serrano's

entry into Torres's home on June 21, 2015 as well as Torres's subsequent prosecution for

shooting at a motor vehicle contrary to New Mexico law. *See* N.M. Stat. Ann. § 30-3-8(B).  The

Chief and Detectives assert that Torres cannot overcome their immunity from suit because

Torres consented to the entry of his home and voluntarily handed over the gun.  Additionally, the

---

[1] The motion is actually one to dismiss or, in the alternative, summary judgment. Because the Court does consult matters outside the pleadings in resolving the motion, the Court construes the motion as one for summary judgment. Defendants make an arguable point that the Court can view the video recording capturing some of the events as inherently part of the pleadings without converting the motion.  This "grey area" is easily avoided by resolving the matter under summary-judgment standards as it applies to qualified immunity, especially since Defendants followed the Local Rules applicable to such motions.

Chief and Detectives contend that Torres's criminal prosecution was supported by probable cause. Torres claims genuine issues of material fact preclude summary judgment and he needs discovery to properly oppose the Chief and Detectives' motion. With the consent of the parties to conduct dispositive proceedings, *see* 28 U.S.C. §636(c), the Court has considered the parties' submissions and applicable law as well as reviewed the record on summary judgment. Having done so, the Court concludes the Chief and Detectives are entitled to qualified immunity and grants their motion in part.

## BACKGROUND

On June 21, 2015, Torres, then a law enforcement officer with the Village of Santa Clara, was off duty hosting a Father's Day barbeque at his home on Swan Street in Silver City, New Mexico. (UMF[2] 2; Doc. 33-1, Supp. Police Report). Torres was outside and observed a black truck at a nearby intersection as well as a crowd of people. (*Id.*). Torres heard arguing, a fight, and ultimately gunshots.[3] (*Id*; UMF 3, Doc. 33-1). After securing his family inside the home and retrieving his personal weapon, a Glock .40, Torres stood in his yard and noticed the black truck begin to drive off. (Doc. 33-1). When Torres saw the vehicle's passenger shoot, Torres fired the Glock .40 several times. (*Id.*).[4]

---

[2]"UMF" or "undisputed material fact" refers to the separately numbered facts asserted by the moving party as required by the Local Rules on summary-judgment practice.

[3]Torres disputes UMF 3 because the record support for it, a supplemental police report, states that Torres heard a fight "outside" and there was a "crowd of people gathering," and not "outside his yard" as Defendants claimed. The Court is unsure, and Torres does not explain, why these differing facts are material. Nonetheless, the Court must accept Torres's version as true and does so by referencing the actual underlying exhibit as opposed to the parties' respective glosses on the document. The Court is also cognizant that police reports may be inadmissible hearsay and incapable of supporting or controverting a fact on summary judgment. *See Gross v. Burggraf Const. Co.*, 53 F.3d 1531, 1541 (10th Cir. 1995)("It is well settled in this circuit that we can consider only admissible evidence in reviewing an order granting summary judgment. Hearsay testimony cannot be considered because [a] third party's description of [a witness'] supposed testimony is not suitable grist for the summary judgment mill."). That concern is alleviated here because Torres is a party opponent and otherwise does not object to the police report.

[4] Torres further disputes Defendant UMF 3 because, in his view, Reynolds, Murillo, and Hobbs do not clarify that the passenger of the vehicle began to shoot first before Torres returned fire. As above, Torres does not explain why the dispute is material but for purposes of the motion, the Court has adopted the police report's recitation of Torres's statements to Capitan Hernandez of the Silver City Police Department.

Detectives Murillo and Hobbs and Chief Reynolds were dispatched to Swan Street in response to a "shots-fired call." (UMF 1; Doc. 33-1). Once there, they asked Officer Serrano, also of the Santa Clara Police Department, to secure Torres's gun. (UMF 4).[5]  Officer Serrano obliged. (*Id*). As Officer Serrano reached Torres's residence, Officer Serrano called for "Manny" through a screen door. (Doc. 33-2, Lapel Camera Video; 0:0:35- 45).[6]  Torres responded, "yo," and Officer Serrano backed up opening the screen door without entering the home. (*Id.*, 0:0:47-48).  Almost immediately, as Officer Serrano held the screen door ajar, Torres appeared in the entryway. Officer Serrano asked Torres "where's your weapon?" (*Id.*). In response, Torres motioned with his hand for Officer Serrano to follow Torres inside the house; Officer Serrano entered and trailed Torres several feet to the living room.  (*Id.*).

Once inside, Torres asked Officer Serrano, "do you need it?"[7] (*Id.*, 0:0:58-0:1:01). Officer Serrano explained he did need the gun, and cautioned Torres not to touch "it." (*Id.*). Nonetheless, Torres took a pistol from the couch and handed it to Officer Serrano. (*Id.*)  After doing so, Torres inquired whether Officer Serrano would unload the gun, and Officer Serrano explained that he would give the weapon to "them" as is. (*Id.*).  Torres also asked Officer Serrano, "are you going to take it?" (*Id.*, 0:1:01-0:1:15).  Officer Serrano confirmed he was taking the weapon and asked if Torres had "unloaded any other?" (*Id.*).  Thereafter, Torres handed Officer Serrano a magazine. (*Id.*).

---

[5] Torres suggests that who exactly directed Serrano to secure the weapon is one of the case's biggest mysteries. In their motion, the Chief and Detectives concede they collectively ordered Officer Serrano to secure the weapon. Even if there is confusion as to who specifically made the request to Officer Serrano, it is immaterial to the analysis. In fact, as explained in the analysis, Torres needs the concession, for without it he has no arguable basis to impute Officer Serrano's conduct to the Chief and Detectives.

[6] Torres lodges several complaints as to the Chief and Detectives' description of Officer Serrano's video footage of the events. To ensure it reviews the footage in the light most favorable to Torres, the Court has examined the video and recites the facts as observed directly from that footage without either parties' gloss on the events.

[7] The parties and papers refer at times to two magazines.  There are two magazines; however, one was inside the gun when Torres turned it over to Officer Serrano.

After about forty seconds inside the house, Officer Serrano began to leave, and Torres asked Officer Serrano to "hold up." (*Id.*, 0:0:50 – 0:1:50). The purpose for the request is unclear, but Officer Serrano remained for a moment before exiting the home. (*Id.*). Officer Serrano then returned to his squad car and placed Torres's gun and magazines on the hood. (*Id.*) A minute or so later, Torres joined Officer Serrano at the police unit. (*Id.*, 0:3:45-0:5:00). Officer Serrano told Torres that "one of the officers" asked him to secure Torres gun. (*Id.*). The two briefly discussed the incident: Officer Serrano indicated that Torres had hit the dark-colored truck a number of times; Torres did not provide an explanation for why he shot at the truck; and Torres denied he had been drinking. (*Id.*). The exchange ended in a fist bump and Officer Serrano informing Torres that "they're probably going to go talk to you" and that if Torres "needed anything" to let Officer Serrano "know." (*Id.*).

At some point that evening or the following morning, Detective Murillo sought, obtained, and executed a search warrant for Torres's "handgun[,] handgun case[,] handgun ammunition and/or cases[,][and] DNA evidence, such items containing blood, to include DNA swabbing, articles of clothing/materials." (UMF 7, Doc. 33-3).[8] According to Detective Murillo's supporting affidavit, Torres told Detective Hobbs that he "came out of his residence when he heard gunshots" and "did shoot several times at the blue truck as it was passing in front of his residence." (*Id.*). Police officers ultimately located seven bullet holes in the driver's side of the vehicle at which Torres had shot. (UMF 6, Doc. 33-1).

Detective Hobbs subsequently filed a single-count criminal complaint in the Grant County, New Mexico magistrate court charging Torres with a fourth-degree felony for "intentionally and unlawfully shoot[ing] a motor vehicle with reckless disregard for another

---

[8] Torres takes issue with the timing of the search warrant and its execution. The Court does not ascribe any specific time to the obtaining and execution of the warrant.

person" in violation of N.M. Stat. Ann. § 30-3-8.  (Doc. 33-3, Crim. Compl.).   Chief Deputy

District Attorney George Zsoka, "approved" the document but ultimately refiled the matter in

state district court after the parties agreed to a *nolle prosequi*.  The criminal information initiated

in district court was later dismissed after a preliminary hearing.

Torres commenced this lawsuit in federal court on July 25, 2017. (Doc. 1, Compl.).  As is

relevant to this motion, Count I alleges that the Chief and Detectives, as part of the collective

term "Defendants," violated Torres's Fourth and Fourteen Amendment rights when they (1)

"entered his property and home without warrant and without authority";  (2) "without a warrant

and without authority, demanded and removed property from Plaintiff's home"; (3) left the

property on the hood of a police car unattended; (4) made reckless misrepresentations and

deliberate falsehoods to secure a search warrant; (5) fabricated an affidavit in support of criminal

charges that excluded known exculpatory information and was premised upon reckless or

deliberate falsehoods; (6) spoiled evidence and otherwise failed to perform a competent

investigation and collect evidence; and (7) failed to corroborate or investigate information

included the affidavit supporting the criminal complaint.  Chief Reynolds and Detectives Murillo

and Hobbs now assert entitlement to qualified immunity. (*See* Doc. 33).

## STANDARD

Qualified immunity entitles a law enforcement officer to avoid trial and the other burdens

of litigation arising from the performance of his or her discretionary functions.  *See Quinn v.*

*Young*, 780 F.3d 998 (10th Cir. 2015).  To give effect to the doctrine, the Court views the

parties' respective burdens on summary judgment differently.  *See Clark v. Edmunds*, 513 F.3d

1219, 1222 (10th Cir. 2008); *Price-Cornelison v. Brooks*, 524 F.3d 1103, 1108 (10th Cir. 2008).

To defeat qualified immunity on summary judgment, the plaintiff must satisfy "a strict two-part

test" by establishing with record evidence (1) "the defendant's actions violated a constitutional . . . right" and (2) that right was "clearly established at the time of the conduct at issue." *Clark*, 513 F.3d at 1222 (internal quotation marks and citation omitted).  The Court has discretion to analyze the two prongs in whatever order it chooses "in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).  If a plaintiff satisfies the two-part test, then—and only then—does the law enforcement officer bear his or her traditional burden under Federal Rule of Civil Procedure 56 to show the absence of a triable issue of fact. *See Clark*, 513 F.3d at 1222.

## ANALYSIS

From what the Court can discern, Count I against the Chief and Detective comprises two distinct theories: their alleged (1) illegal entry into Torres's home and seizure of Torres's gun; and (2) malicious criminal prosecution of Torres in the state court. [9] The Chief and Detectives contend Torres has not and cannot meet his burden to show that they deprived him of a constitutional right that was clearly established as of June 21, 2015.  Torres disagrees and additionally asserts discovery is needed for him to properly respond on summary judgment.

### Warrantless Entry and Seizure

The Fourth Amendment protects "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const., amend. IV. It also commands that "no warrants shall issue, but upon probable cause, supported by oath or

---

[9] As identified above Count I alleges potentially seven different theories.  In his response, Torres clarifies that his claims against the Chief and Detectives relate to the entry of Torres's home and the prosecution initiated against him.  The Court takes Torres at his word and construes the complaint in that manner.  Even if there were other, conceivable constitutional claims lurking in Count I's imprecise language, the burden to show a violation of a clearly established constitutional right is on Torres. Since Torres does not address any other Fourth Amendment rights or cite law showing they are clearly established, he necessarily fails to carry the burden assigned to him by law, and summary judgment is appropriate on that basis as well. *See Gutierrez v. Cobos*, 841 F.3d 895, 901 (10th Cir. 2016).

affirmation, and particularly describing the place to be searched, and the persons or things to be seized." *Id*. (internal capitalization omitted). "[T]he Fourth Amendment protects people, not places." *Katz v. United States*, 389 U.S. 347, 351 (1967). The inquiry, therefore, turns not on whether a particular place is worthy of constitutional protection, but whether the individual has an expectation of privacy in the place searched and whether that expectation was objectively reasonable. *See id.* There is no doubt, however, that a citizen has a reasonable expectation of privacy, and a particularly strong one, in his own home. *See Kyllo v. United States*, 533 U.S. 27, 31 (2001) ("At the very core of the Fourth Amendment stands the right of a man to retreat into his own home and there be free from unreasonable governmental intrusion.") (Quotation omitted)).

The Fourth Amendment's protection is not absolute. "One of the specifically established exceptions to the requirements of both a warrant and probable cause is a search that is conducted pursuant to consent." *United States v. Pena-Sarabia,* 297 F.3d 983, 985 (10th Cir. 2002). Consent must be given knowingly and voluntarily, but need not be verbally given. *See Patel v. Hall*, 849 F.3d 970, 981 (10th Cir. 2017). As above, the determination focuses on reasonableness, and the Court asks whether, under the totality of the circumstances, a reasonable officer would have understood from the exchange between the officer and the suspect that the suspect consented to the warrantless search and seizure. *See United States v. Flores*, 48 F.3d 467, 468-69 (10th Cir. 1995). Thus, "[t]he focus is not whether one subjectively consented, but rather, whether a reasonable officer would believe consent was given' as 'inferred from words, gestures, or other conduct.'" *United States v. Lopez-Carillo*, 536 F. App'x 762, 768 (10th Cir. 2013) (quoting *United States v. Pena-Ponce*, 588 F.3d 579, 584 (8th Cir. 2009)).

In this case, the parties agree that the Chief and Detectives themselves did not enter Torres's home or seize anything. Instead, Torres asserts these Defendants violated the Fourth Amendment because they asked Officer Serrano to secure the gun used in the incident. The Chief and Detectives do not challenge the legal foundation of Torres's theory, concede Torres has a legitimate expectation of privacy, and admit Office Serrano did not have a warrant to enter the premises or seize personal property at the time Officer Serrano entered Torres's home. As the parties frame it, the two questions the Court must answer are whether Torres consented to Officer Serrano's warrantless entry into the home and warrantless seizure of the gun and magazines.

### Constitutional-violation prong of the qualified-immunity analysis

Officer Serrano's lapel camera recorded the exchange between Officer Serrano and Torres.[10] The footage demonstrates that Officer Serrano approached Torres's residence and called for "Manny" through a screen door. After Torres responded, "yo," Officer Serrano opened the screen door without entering the home. At that point, Torres appeared, and Officer Serrano asked "where's your weapon?" In response, Torres motioned for Officer Serrano to follow Torres inside the house, and Officer Serrano, who was a few feet from the threshold holding the screen door open, entered. Torres asked Officer Serrano, "do you need it?" Officer Serrano answered that he did need the gun, and indicated that Torres should not touch "it." Near the entryway, in what appeared to be the living room, Torres took a pistol from the couch and handed it to Officer Serrano. Torres then inquired whether Officer Serrano would unload the gun, and Officer Serrano explained that he would give the weapon to "them" as is. Torres also

---

[10] In his response, Torres seems to suggest the Court should not consider the footage because it had not been authenticated. To extent there are any authenticity concerns, the Chief and Detectives have submitted an affidavit authenticating the video.

asked, "are you going to take it?" Officer Serrano confirmed he was taking the weapon and probed whether Torres had "unloaded any other?" Torres handed Officer Serrano a magazine.

After about forty seconds inside, Officer Serrano began to leave when Torres asked Officer Serrano to "hold up."  Officer Serrano remained for a moment before exiting the home and returning to his squad car, where he placed Torres's gun and magazines on the hood.  A minute or so later, Torres joined Officer Serrano at the police unit.  There Officer Serrano told Torres "one of the officers" asked Officer Serrano to secure the gun.  After some discussion about the incident—why Torres shot for which he gave no answer and whether Torres had been drinking, which he had not—Torres parted company with Officer Serrano after a fist bump.

<u>Entry into the home</u>

After viewing the recording, the Court is persuaded that Officer Serrano did not violate the Fourth Amendment by opening the screen door of the house and following Torres inside.[11] Although Torres did not verbally invite Officer Serrano into the house, Torres's hand gesture coupled with the totality of the circumstances and lack of objection to Officer Serrano's conduct provided Officer Serrano an objectively reasonable basis to believe Torres invited Officer

---

[11] Another argument that Torres might have, but did not, make is that Officer Serrano's opening the screen door was itself an unlawful entry.  The Ninth Circuit, for example, has suggested *in dicta* that, in the summertime, a screen door, serves the same purpose a home's main door and when an officer opens it without a warrant, the privacy barrier to the home is violated as is the Fourth Amendment. *See United States v. Arellano-Ochoa*, 461 F.3d 1142 (9th Cir. 2006).  The Tenth Circuit has expressed doubt as to such a broad proposition and has held that an officer who opens a storm door to knock on a partial ajar front door does not violate the Fourth Amendment. *See United States v. Walker*, 474 F.3d 1249, 1253 (10th Cir. 2007) ("Regardless of the merits of [*Arellano-Ochoa*'s] proposition in some circumstances, we see no violation of Mr. Walker's reasonable expectation of privacy in Deputy Parker's knock on his inner door").  The Court declines to make the parties' arguments for them, but notes that in this case that Officer Serrano first called through the screen door, which is a least the equivalent of a knock, *see e.g. Brigham City v. Stuart*, 547 U.S. 398, 406 (2006), the door opened outwards from Torres's house, and Officer Serrano backed up from the residence a number of feet holding the door open as Torres appeared almost immediately and motioned Officer Serrano inside the home before Officer Serrano actually physically entered the home.  It is unclear that the Tenth Circuit would hold this conduct to be a violation of the Fourth Amendment.  At the very least, even if the conduct technically violated the Fourth Amendment, Officer Serrano and by extension the Chief and Detectives, would enjoy qualified immunity on the clearly-established prong of the analysis.  As explained below, Torres has not carried his legal burden to identify decisional law predating June 21, 2015 placing Officer Serrano on notice that his entry into the house where there was objective indicia of consent violated the Fourth Amendment.

Serrano in the house. *See United States v. Guerrero*, 472 F.3d 784, 789-90 (10th Cir. 2007) (explaining that consent need not be verbal and "may instead be granted through gestures or other indications of acquiescence, so long as they are sufficiently comprehensible to a reasonable office."). In fact, as Officer Serrano attempted to leave, Torres asked him to "hold up," a request that is antithetical to Torres's claim of unlawful entry. The voluntariness of the circumstances is further underscored by lack of any coercive or overbearing behavior and exemplified by the manner in which the exchange ended—with a fist bump and Officer Serrano asking Torres to let Officer Serrano know if Torres needed anything. The video is uncontroverted and appears to capture the entirety of the interaction. The Chief and Detectives are therefore entitled to summary judgment on the basis of qualified immunity because Torres has not established Officer Serrano unlawfully entered Torres's home.

Seizure of the gun

Officer Serrano's retrieval of the weapon and magazines presents a closer call. The scope of consent is typically "limited by the breadth of the consent given." *United States v. McRae*, 81 F.3d 1528, 1537 (10th Cir. 1996). While the Court has little difficulty finding that Torres's hand gesture invited Officer Serrano into the house, it does not necessarily follow that Torres's non-verbal communication meant that Torres had consented to the seizure of the gun and magazine without a warrant as well. In fact, while Torres seemed willing to handover the gun to Officer Serrano, he did not necessarily understand Officer Serrano's intention to remove it as evidenced by his question to that effect. At the same time, Officer Serrano's stated purpose for contacting Torres was to find the pistol, and Torres did not object to handing the items to Officer Serrano. Indeed, Torres handed over a magazine *after* Torres knew Officer Serrano was confiscating the firearm.

A strong argument exists that Torres voluntarily relinquished his Glock .40 and magazines. Acquiescence generally supports consent as does handing over items of personal property without objection. *See Guerrero*, 472 F.3d at 789-90; *United States v. Patten*, 183 F.3d 1190, 1192-95 (10th Cir. 1999) (upholding consent where an officer repeatedly asked the defendant to open his suitcase and in response the defendant did so gradually); *United States v. Amador-Beltran*, 655 F. App'x 666, 668 (10th Cir. 2016) (explaining that by handing personal property to an officer without limitation, the defendant "sufficiently manifested" her permission to search). Moreover, from the Court's review of the recording, none of the elements of coercion that the case law articulates are present. *See United States v. Jones*, 701 F.3d 1300, 1318 (10th Cir. 2012) (identifying "physical mistreatment, use of violence, threats, promises, inducements, deception, trickery, or an aggressive tone, the physical and mental condition and capacity of the defendant, the number of officers on the scene, and the display of police weapons" as non-exhaustive factors to consider in assessing voluntariness). The Court recognizes that "mere submission to lawful authority" is insufficient for consent and an officer in an individual's home that makes demands to take property carries necessarily some coercive force. *See United States v. Rodriguez*, 525 F.2d 1313, 1316 (10th Cir. 1975).

Even construing Officer's conduct as a directive to turn over the gun and magazines, the Court is not convinced consent was absent. In *Jones*, the Tenth Circuit upheld a consent finding on arguably egregious conduct by law enforcement. 701 F.3d at 1318. There, Missouri police officers entered Kansas and engaged the defendant in conversation outside of his home. One officer took the defendant's driver's license and another implied that the defendant could be on his way if he let the officers search his home. In fact, after seizing his license, one officer said to the defendant "I'm here for your marijuana plants" and "let's clear up what we have here today

and make sure that there are no marijuana plants here at your house." *Id.* at 1320 (internal alterations omitted). The defendant did not verbalize consent; nor did he "openly refuse consent to a search of his residence." Id. at 1307. Instead, in mid-conversation, the defendant turned back toward the home and began walking. The officers followed, smelt a strong odor of marijuana, and entered a screened-in porch area. When the defendant entered into the living room of the home after unlocking a door, the defendant aimed a gun at one of the officers inside the home. Another officer shot the defendant five or six times, wounding him. The officers retreated and obtained warrants.

The defendant was ultimately indicted on federal drug charges and moved to suppress the marijuana seized, claiming he did not consent to the officer entry into his home. The district court denied the motion, and the defendant appealed. Among other things, the defendant argued that the comment that the officers were there for his marijuana plants and their demand to clear up that he had no plants "rendered involuntary any consent [the defendant] may have given." *Id.* at 1319. The Tenth Circuit disagreed. Although the court of appeals explained that the statement "was accusatory and may well have been jolting to a reasonable person," the court could not "conclude that a reasonable person would have felt so threatened or cowed by the statement that he or she would have involuntarily complied with an officer's requests or directions." *Id.*

In this case, like *Jones*, the Court cannot say that that a reasonable person would have felt from Officer's Serrano's statements that he had no choice but to produce the gun and magazines. Even after Torres confirmed Officer Serrano's intent was to seize the guns he turned over an additional magazine. Nonetheless, even though there may be competing inferences to draw from Officer Serrano's comments to Torres, the Court is permitted to and does resolve the qualified immunity issue on more narrow grounds; that Torres has not shown Officer Serrano—and by

extension the Chief and Detectives—deprived Torres of any *clearly* established constitutional

right as analyzed below in the section devoted to the second prong.

<u>Unconstitutional ruse and the Chief and Detective's personal involvement</u>

Torres implies his relationship with Officer Serrano as a "colleague and acquaintance"

renders consent involuntary and argues that a triable issue of fact also exists as to whether the

Silver City Police Department ordered Officer Serrano to obtain the gun and magazines.  As to

the first point, Torres does not cite to record evidence to establish that Officer Serrano gained

access to Torres's home and took the gun on that basis.  Even if such a theory is cognizable

under the Fourth Amendment, Officer Serrano was dressed in full uniform as reflected in the

video.  Officer Serrano called out to "Manny," asked after Torres's gun, and followed Torres into

the residence only after Torres waived him in. Objectively, although it appears the two were

familiar, Officer Serrano did not invoke their relationship as a basis for gaining access and was

there is his capacity as a law enforcement agent.

Even if Torres could offer record support for a ruse, the only concept that might square

with Torres's friendship theory, *see United States v. Harrison*, 639 F.3d 1273, 1280 (10th Cir.

2011) (explaining that where "the effect of the ruse is to convince the resident that he . . . has no

choice but to invite the undercover officer in, the ruse may not pass constitutional muster")

(citation omitted), any such claim would be "blatantly contradicted" by the video footage and not

capable of creating *genuine* issue of fact for trial.  *See Scott v. Harris*, 550 U.S. 372, 380 (2007)

("When opposing parties tell two different stories, one of which is blatantly contradicted by the

record, so that no reasonable jury could believe it, a court should not adopt that version of the

facts for purposes of ruling on a motion for summary judgment.").  The recoding does not

evidence any conduct that reasonably could be seen as presenting Torres, himself trained in the

law, as no choice but to allow Officer Serrano inside. Notwithstanding their status as coworkers and perhaps even friends, the Court concludes Torres's and Officer Serrano's service on the same police force does not provide a basis for overcoming qualified immunity.

As to the second point— an alleged existence of genuine issue of material fact as to "whether SCPD acted to direct Defendant Serrano to search and seize Plaintiff's property without a warrant, making SPCD/City of Silver City liable for his wrongful actions"— Torres's argument is not well taken. The liability of these Defendants is not at issue in this motion for summary judgment.[12] To the extent Torres suggests there is a triable issue because it is unclear whether (and who specifically among) the Chief and Detectives directed Officer Serrano to secure Torres's gun, the point amounts to a distinction without a difference. The Chief and Detectives concede they asked Officer Serrano to secure the gun and, *arguendo*, that a constitutional violation could be imputed to them. As a result, it is immaterial who specifically directed Officer Serrano, and Torres's arguments do not provide a basis for overcoming qualified immunity. [13]

### *Clearly-established prong of the qualified-immunity analysis*

Even if Torres could establish that Officer Serrano's warrantless entry and seizure violated the Fourth Amendment, Torres must satisfy his legal burden to identify, cite, and apply case law that existed as of June 21, 2015 and served to *prohibit* Officer Serrano's actions under similar circumstances. *See Gutierrez v. Cobos*, 841 F.3d 895, 901 (10th Cir. 2016). "To qualify

---

[12]At other points in Torres's response, he discusses state law claims and other parties. The Court, however, has only considered the relief requested in the motion for summary judgment—dismissal of Count I against the Chief and Detectives on the basis of qualified immunity. The Court's ruling relates only to that specific Count and Defendants.

[13] Contrary to Torres's implication, the Chief and Detectives' concession assists Torres. Torres has the burden to establish that these individuals *personally* participated in a constitutional violation as part of satisfying his burden to overcome qualified immunity. *See Foote v. Spiegel*, 118 F.3d 1416, 1423-24 (10th Cir. 1997) (holding that individual liability § 1983 must be based on personal involvement in the alleged constitutional violation). Without the concession, Torres would have no factual basis in the record to impute any alleged unconstitutional conduct to the Chief and Detectives.

as clearly established, a constitutional right must be sufficiently clear that _**every**_ reasonable

official would have understood that what he is doing violates that right." *Redmond v. Crowther*,

882 F.3d 927, 935 (10th Cir. 2018) (internal quotation marks omitted) (emphasis added). Thus,

to overcome qualified immunity on the clearly-established prong, the plaintiff must identify "a

Supreme Court or Tenth Circuit case that is sufficiently on point," or cite a "weight of authority

from other courts," *id.*, in which the officer "was held to have violated the Fourth Amendment."

*White v. Pauly*, 137 S. Ct. 548, 552 (2017). The decisional law need not be completely on all

fours, but "existing precedent must have placed the statutory or constitutional question beyond

debate." *Id.* As the Supreme Court has translated this mandate, a plaintiff may not rely on cases

that frame Fourth Amendment prohibitions in the abstract—such as the right to be free from

unreasonable searches and seizures—and instead requires a judicial decision "particularized to

the facts of the case" that is capable of giving an officer "fair and clear warning" that his conduct

is unconstitutional. *Id* (citations and internal quotation marks omitted).

    Here, Torres does not cite authority in analyzing whether the Fourth Amendment forbade

Officer Serrano's warrantless search and seizure, much less offer a case in which an officer was

held to have violated the Constitution under circumstances where there are objective indicia of

consent. Without such a case, the Court cannot say Officer Serrano acted unreasonably in

entering Torres's residence and receiving the gun and magazines; Torres waived Officer Serrano

into the home and handed over the personal property without objection. *See Gutierrez*, 841 F.3d

at 901 (upholding summary judgement on qualified immunity where "Plaintiffs did not cite case

law or make a legal argument to show how any infringement of their constitutional rights

violated clearly established law"). Since Officer Serrano did not deprive Torres of any clearly

established constitutional right, the Chief and Detectives' directive to Officer Serrano to obtain

the gun likewise cannot serve as predicate for liability. The Court therefore concludes that qualified immunity is appropriate at the second step of the analysis.

<u>**Prosecution for Shooting at a Motor Vehicle**</u>

Torres contends that Detective Hobbs violated the Fourth-Amendment by maliciously prosecuting Torres in the state court on the charge of shooting at a motor vehicle in violation of N.M. Stat. Ann. § 30-3-8(B). A Fourth-Amendment claim for malicious prosecution requires the plaintiff to prove "(1) the defendant caused the plaintiff's continued confinement or prosecution; (2) the original action terminated in favor of the plaintiff; (3) there was no probable cause to support the original arrest, continued confinement, or prosecution; (4) the defendant acted with malice; and (5) the plaintiff sustained damages." *Novitsky v. City of Aurora*, 491 F.3d 1244, 1258 (10th Cir. 2007). The Chief and Detectives focus primarily on the lack-of-probable-cause element.

*Constitutional-violation prong of the qualified-immunity analysis*

Detective Hobbs filed the criminal complaint at issue in this case along with a supporting affidavit. It is beyond debate that an officer "must have probable cause to initiate . . . prosecution under the Fourth Amendment." *Stonecipher v. Valles*, 759 F.3d 1134, 1141 (10th Cir. 2014). "Probable cause is not a precise quantum of evidence—it does not, for example, require the suspect's guilt to be more likely true than false." *Id.* (internal quotation marks and citation omitted). The question is "whether a substantial probability existed that the suspect committed the crime," which requires only "something more than a bare suspicion." *Kerns v. Bader*, 663 F.3d 1173, 1187 (10th Cir. 2011) (internal quotation marks and citation omitted).

In this case, Torres admits in the complaint that he shot several times at an occupied, moving vehicle on June 21, 2015. New Mexico law proscribes "willfully discharging a firearm

at or from a motor vehicle with reckless disregard for the person of another."  N.M. Stat. Ann. §

30-3-8(B).  The car had occupants, circumstantially evidencing a risk of harm.  *See Adams v.*

*Williams*, 407 U.S. 143, 149 (1972) ("Probable cause does not require the same type of specific

evidence of each element of the offense as would be needed to support a conviction").  Torres's

allegations in the complaint constitute judicial admissions.  *See Guidry v. Sheet Metal Workers*

*Int'l Ass'n*, 10 F.3d 700, 716 (10th Cir. 1993); *Grynberg v. Bar S. Services, Inc.*, 527 Fed. Appx.

736, 739 (10th Cir. 2013) (relying on *Guidry* and determining that statements contained in the

plaintiff's complaint and answer to the counterclaim were binding admissions).  These

admissions establish probable cause for prosecution.

Torres fails to address probable cause as a dispositive element of his cause of action.

Instead, Torres suggests Detective Murillo engaged in errors or omissions in "obtaining an after-

the-fact warrant" for Torres's gun and ammunition.  Even if true, it is hard to see how this

contention negates probable cause for prosecution or is material to the analysis.  Torres was

charged with shooting a gun at a vehicle, which he does not deny.  To the extent Torres is

claiming a separate violation of the Fourth Amendment—a lack of probable cause to seize the

gun and magazines because the search-warrant affidavit contained material omissions, false

representations, or statements made with reckless disregard for the truth—the Court is not

persuaded Torres survives summary judgment.  The fact that he gave the gun and magazines to

Officer Serrano without objection and with indicia of consent is not actionable under the doctrine

of qualified immunity.

In any event, Torres is obligated to point to the affidavit and identify specific omissions,

misrepresentations, and make an affirmative showing of dishonesty.  *See Snell v. Tunnell*, 920

F.2d 673, 698 (10th Cir. 1990) (explaining in the warrant context, "to survive qualified

immunity, a plaintiff must make a substantial showing of deliberate falsehood or reckless disregard for truth" and demonstrate that, including the omitted information in the warrant, or excising the false information, probable cause would not exist or remain). Torres has not attempted to make this showing, and likely could not overcome his own factual averments in the complaint that support probable cause.[14] In short, Torres has not established a constitutional violation, and the Chief and Detectives are entitled to qualified immunity.

### *Clearly-established prong of the qualified-immunity analysis*

The unstated crux of Torres's theory is that he should not have been prosecuted—and is in fact entitled to money damages as a result—because he was a police officer, albeit off duty, that followed protocol in shooting at the moving vehicle. Regardless of the wisdom of the decision to shoot at a moving car, it is true that law enforcement officers are privileged under New Mexico law and immune from civil actions under federal law for their objectively reasonable use of force. *See Graham v. Connor*, 490 U.S. 386, 394 (1989); *State v. Gonzales*, 642 P.2d 210, 213 (N.M. Ct. App. 1982). Thus, had the occupants of the vehicle sued Torres, he would have an argument that his use of force was reasonable. Conceivably, Torres could have used his status as a police officer as a defense in the prosecution. At the same time, Torres does not identify any legal authority standing for the proposition that the probable cause analysis requires evidence negating a state-granted privilege or otherwise precludes prosecution where an off-duty officer admits to shooting at moving vehicle with multiple occupants.

---

[14] The closest Torres comes to making the case for a constitutionally unsound warrant is by suggesting the magistrate that issued the warrant was unaware that the Silver City Police Department did not collect potentially exculpatory evidence and destroyed other material evidence. By way of example, Torres claims law enforcement destroyed or concealed "numerous casing or shells from the gun fight that occurred outside of Plaintiff's home [, which] upon information and belief would have demonstrated that Plaintiff did not shoot twelve .40 caliber rounds, did not hit a vehicle 7 times, did not shoot at a dwelling or occupied building, nor intentionally or unlawfully shot at a motor vehicle with reckless disregard]." The allegations are not supported by the record and therefore do nothing to overcome qualified immunity.

In the probable-cause context, the clearly-established prong is assessed "practically," meaning the Court asks "whether there is arguable probable cause for [prosecution]." *Kaufmann v. Higgs*, 697 F.3d 1297, 1300 (10th Cir. 2012) (citation omitted). In other words, even if an officer is "mistaken about whether he possesses actual probable cause," so long as *a* reasonable officer could have believed probable exits, qualified immunity applies. *A.M. ex rel. F.M. v. Holmes*, 830 F.3d 1123, 1139-40 (10th Cir. 2016) (citations omitted) (emphasis added). In this case, the Court finds that even if Torres status as a law enforcement officer privileged his use of force, Torres's failure to adduce case law clearly prohibiting a finding probable cause under the circumstances entitles the Chief and Detectives to qualified immunity against Torres's claims of malicious prosecution.

## Entitlement to Discovery

Federal Rule of Civil Procedure 56(d) allows the Court to permit discovery before ruling on a motion for summary judgment "when facts are unavailable to the non-movant." Under the rule, the party must "show[] by affidavit or declaration that, for specified reasons, [he] cannot present facts essential to justify [his] opposition[.]" Fed. R. Civ. P. 56(d). The declaration or affidavit must "explain[] why facts precluding summary judgment cannot be presented" and "identify[] the probable facts not available and what steps have been taken to obtain these facts." *Comm. for the First Amendment v. Campbell*, 962 F.2d 1517, 1522 (10th Cir. 1992) (citation omitted). The party seeking discovery "must also explain how additional time will enable him to rebut the movant's allegations of no genuine issue of material fact." *Id*. Qualified immunity heightens the Rule 56(d) inquiry. *See Lewis v. City of Ft. Collins*, 903 F.2d 752, 758 (10th Cir. 1990). The plaintiff's application "must demonstrate how discovery will enable [him] to rebut a defendant's showing of objective reasonableness" and establish "a connection between the

information [sought] in discovery and the validity of the . . . qualified immunity defense." *Id*. at 759. "[R]elief should not be granted when the desired discovery would not meet the issue on which the moving party contends there is no genuine factual issue." *Jones v. City of Denver*, 854 F.2d 1206, 1211 (10th Cir. 1988).

The Court has already addressed Torres's Rule 56 affidavit in the context of Defendant G. George Zsoka and found it lacking. (Doc. 71). The same holds true here. Other than a generalized statement that discovery is necessary on "all factual matters raised in the Motions for Summary Judgment," (Doc. 48-3, Richard's Aff., ¶4), Torres asserts discovery is needed to determine (1) whether Torres heard the fight outside his yard or whether the fight was more generally outside where a crowd had gathered; (2) whether Torres took the gun from his home and began shooting or whether the driver of the truck shot first before Torres fired at the truck; (3) who, and/or whether anyone, from the City of Silver City directed Officer Serrano to secure Torres's weapon; (4) whether Officer Serrano was invited into the home; and (5) whether Torres's gun and ammunition were kept on the hood of Officer Serrano's police vehicle for the seven hours it took to obtain a warrant. (*Id.*, ¶¶16-19).

Torres's Rule 56(d) application is insufficient. As a first impression, Torres seeks discovery on many questions to which *he* should know the answer. Even assuming the categories Torres identified had some nexus to the qualified-immunity analysis, Torres could have simply submitted his own affidavit to establish, for example, what exactly he heard as it relates to the fight and its location, who shot first, and that he did not consent to Officer Serrano entering his home. The Court is, therefore, at a loss why Torres could not present these "facts," why additional time is necessary, and how Torres has been diligent. Moreover, while Torres

may not know *who* directed Officer Serrano to enter the residence, discovery is not necessary on that point because the Chief and Detectives concede they did so.

Many of the topics for which Torres seeks additional time for discovery are also resolved under the summary judgment standard itself. For example, the Court accepted as true Torres contention that he heard the fight outside, not outside his yard, and that that Torres did not shoot first. What the affidavit does not explain, however, is why these facts make a difference to the qualified-immunity inquiry. In other words, Torres does not explain how the facts are material to his burden to establish a constitutional violation. As explained above, the fact that the car had occupants and Torres intentionally shot at it underscores probable cause for prosecution despite Torres's belief that he was following protocol. Ultimately, discovery at the summary judgment stage is unnecessary when the Court is already required to accept a plaintiff's supported version of events as true. Torres has not demonstrated that additional time and discovery are necessary for him to adequately respond to Chief Reynolds, and Detectives Murillo and Hobbs' motion for summary judgment.

## CONCLUSION

Chief Reynolds, Detective Murillo, and Detective Hobbs are entitled to qualified immunity. Torres has not shown any violation of a clearly established constitutional right premised on Officer Serrano's entry into Torres's home and receipt of Torres's gun and magazines. Nor has Torres demonstrated that his prosecution for shooting at a vehicle was undertaken without probable cause. Because the Court cannot discern and Torres does not support any other theory of relief against the Chief and Detectives in Count I, summary judgment is appropriate notwithstanding Torres's request for time to undertake discovery.

**IT IS, THEREFORE, ORDERED** that Chief Reynolds and Detectives Murillo and Hobbs' motion to dismiss and/or for summary judgment (Doc. 33) is **GRANTED IN PART** and **DENIED IN PART.** The motion is **DENIED** to the extent it seeks dismissal on the basis of Federal Rule of Civil Procedure 12(b)(6), but **GRANTED** to the extent is seeks summary judgment on the basis of qualified immunity.

**IT IS FURTHER ORDERED** that Torres's request for additional time to conduct discovery is **DENIED**.

**IT IS FURTHER ORDERED** that Count I as it relates to Chief Reynolds and Detectives Murillo and Hobbs is **DISMISSED WITH PREJUDICE.**

_____

KEVIN R. SWEAZEA
UNITED STATES MAGISTRATE JUDGE
Presiding by Consent